UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LARRY WAYNE COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 3:07-CV-444 |
| | ) | (VARLAN / SHIRLEY) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 10 and 11] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 12 and 13]. Plaintiff Larry Collins ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge, the final decision of Defendant Commissioner.

On May 26, 2004, Plaintiff filed his application for disability insurance benefits, claiming disability as of July 15, 2001 (Tr. 53-55). After his application was denied initially and upon reconsideration, Plaintiff requested a hearing. On May 9, 2007 a hearing was held before an Administrative Law Judge ("ALJ") to review determination of Plaintiff's claim (Tr. 239-55). On May 25, 2007, the ALJ found that Plaintiff was not disabled because he could perform a significant number of jobs at any exertional level (Tr. 14-22). On September 24, 2007, the Appeals Council

denied Plaintiff's request for review (Tr. 4-6), and the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

**I.      ALJ Findings**

The ALJ made the following findings:

> 1. The claimant met the insured status requirements of the Social Security Act through December 31, 2006.
>
> 2. The claimant has not engaged in substantial gainful activity since July 15, 2001, the alleged onset date (20 C.F.R. 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3.   The claimant has the following severe impairments: status post hernia repair, hepatitis B, cirrhosis, depression and personality disorder (20 C.F.R. 404.1520(c) and 416.920(c))
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has no physical limitation aside.  However, he would be able to remember and carry out simple instructions; however, would have moderate limitation in detailed instructions but still can do; able to interact with general public with some difficulty at times but still can do and is able to respond to routine changes.
>
> 6.  The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).
>
> 7. The claimant was born on October 30, 1952 and

was 48 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not under a "disability" as defined in the Social Security Act, from July 15, 2001, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 16-22).

## II. Disability Eligibility

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.150). Plaintiffs bear the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

**III.    Standard of Review**

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).

**IV.    Arguments**

Plaintiff argues on appeal that substantial evidence does not support the ALJ's disability determination. Plaintiff contends the ALJ erred in failing to properly evaluate his mental impairments and associated limitations, as set forth in the opinion of Senior Psychological Examiner Garland, which resulted in an inaccurate RFC determination [Doc. 11]. Plaintiff further argues that the ALJ failed to sustain his burden of proof by improperly relying on the Medical-Vocational Guidelines and not obtaining a vocational expert. The Commissioner, in response, contends that substantial evidence supports the ALJ's finding of non-disability and any arguments to the contrary

must fail [Doc. 13]. The Commissioner further responds that the ALJ sustained his burden at the fifth step of analysis and was not required to obtain a vocational expert. Plaintiff bears the burden of proving his entitlement to benefits. Boyers v. Sec. of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

### A. RFC Determination

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ failed to explain his rejection of the limitations identified by Ms. Garland, a licensed psychological examiner. The Plaintiff identifies Ms. Garland's assessment of his limitations from the record as follows: Plaintiff is limited in his ability to do very detailed and complex work; his recent memory was poor; his remote memory was fair; his concentration was poor on the mental status exam; his ability to get along with people, by history, has been moderately to severely limited; he appears to be a person who would have difficulty responding to criticism and accepting instructions from others; he may have difficulty with authority figures; his ability to get along with the public appears moderately to severely limited; and his adaptation appears to be moderately to moderately limited (Tr. 163-168).

The Court finds there is substantial evidence in the record to support the ALJ's RFC determination. In determining RFC, the ALJ must base his assessment upon all relevant evidence, which may include claimant's own description of limitations, medical records, and observations of treating physicians and others. See 20 C.F.R. § 404.1545(a). Certainly, the administrative record contains objective evidence of conditions which would reasonably be expected to produce the alleged symptoms associated with Plaintiff's mental impairment. At the same time, the record also

contains evidence that Plaintiff's limitations are not as severe as alleged.

The ultimate RFC finding identified that Plaintiff could perform unskilled work at all exertional levels, limited by his ability to carry out and remember simple instructions, some limitation regarding interactions with the public, and some difficulties in responding to routine changes at work (Tr. 19). The ALJ reasonably relied on the medical opinions and objective findings on record, including Ms. Garland's assessment of Plaintiff's mental condition. Ms. Garland identified that while Plaintiff stated that a good day was when he was not bothered by people, he was with friends almost daily (Tr. 20; 166). The evidence from Ms. Garland's assessment of the Plaintiff, specifically that she found Plaintiff suffered from "no thought disorder," he felt he could work if "his hernia were fixed," and he could work if he could "find a job he liked" substantially supports the ALJ's conclusion that Plaintiff could perform unskilled work (Tr. 20; 166-67). These statements indicate that Plaintiff thought he could perform some work despite his perceived limitations. The ALJ also noted Ms. Garland's finding that Plaintiff would be limited in performing very detailed or complex work (Tr. 18). By limiting the Plaintiff to unskilled work, the ALJ took into account Ms. Garland's assessed limitations with all other objective medical evidence associated with the Plaintiff's mental condition. See Mazjarz v. Secretary of Health & Human Servs., 837 F.2d 240, 247 (6th Cir. 1987) (holding it is the function of the ALJ to determine what medical restrictions a Plaintiff has and how they affect her residual functional capacity); 20 C.F.R. § 404.1546(c).

It is noteworthy that after Plaintiff was examined by Ms. Garland in 2004, he began receiving treatment from Cherokee Mental Health in September of 2005. Plaintiff's records from Cherokee indicate that on April 24, 2006 his lowest GAF on record was 50, while his highest and current GAF was 65 (Tr. 17, 227). Plaintiff's GAF of 65 indicated that he was benefitting from medication and

only had mild symptoms resulting from his mental illness (Tr. 17, 227). In July 2006, Plaintiff was assessed to have a GAF of 60 (Tr. 17, 226). Ms. Garland's 2004 findings that Plaintiff had the ability to cook, visit and go to the grocery store with a GAF of 50 indicate that Plaintiff was able to become more efficient in these tasks after a consistent treatment plan was instituted by Cherokee in 2005 and 2006 (Tr. 17-18, 227). Records from Cherokee indicate that as long as Plaintiff continues with his medication, he gets "symptomatic relief of depression and moodiness" (Tr. 223). Also, Plaintiff's own testimony about the intensity, persistence, and limiting effects of his mental illness were not deemed fully credible by the ALJ (Tr. 20). While Plaintiff did not object to the ALJ's credibility finding, his own testimony stated that when he was having a bad day Plaintiff remained inside all day to watch television, but later contradicted this statement by stating that he could not sit down and watch a television program (Tr. 20, 248, 251-252). Accordingly, the ultimate RFC finding was supported by the above cited medical evidence, and bolstered by the Plaintiff's lack of credibility (Tr. 21).

### B. Commissioner's Burden

Finally, Plaintiff contends that the Commissioner has failed to sustain his burden of establishing that there is other work in the national economy that Plaintiff can perform. Specifically, Plaintiff argues that the ALJ erred in failing to obtain a VE and did not carry his burden by relying solely on the Medical-Vocational Guidelines ["the grids"].

The ALJ found that Plaintiff did not have a psychological impairment that significantly compromised his occupational base (Tr. 22). The Commissioner may meet his burden by referring solely to the grids unless claimant suffers from a nonexertional limitation that significantly limits the range of work permitted by his exertional limitations. Cole v. Secretary of Health & Human

Services, 820 F.2d 768, 771 (6th Cir. 1987). After reviewing the objective evidence and listening to Plaintiff's testimony, the ALJ's determination that Plaintiff's nonexertional limitations have little or no effect on his occupational base is supported by substantial evidence (Tr. 19). In the present case, the Plaintiff's nonexertional limitations are of no more than moderate severity (Tr. 19). The ALJ accordingly relied on the grid as a framework to direct a finding of "not disabled" (Tr. 22). Further, if the ALJ discredits a claimants complaints of nonexertional impairments, the ALJ is not required to consult with a vocational expert and may properly rely on the grid. Gill v. Astrue, 2007 WL 2692171, at #1 (W.D. Tenn. Sept. 12, 2007) (citing Buress v. Sec'y of Health and Human Servs., 835 F.2d 139, 142 (6th Cir. 1987)). In the present case, the ALJ deemed some of Plaintiff's complaints about the intensity, persistence, or functionality of Plaintiff's nonexertional limitations as not credible (Tr. 19).

Additionally, Plaintiff argues that the ALJ did not comply with Social Security Ruling 85-15 when he did not cite examples of jobs Plaintiff could perform. However, SSR 85-15 states that specific job examples be provided to the complainant when "vocational resources" are used. In the present case, vocational resources, such as a vocational expert were not used. Thus, SSR 85-15 does not apply to the current case.

## V.    Conclusion

In light of the foregoing, the Court finds substantial evidence on the record as a whole supports the ALJ's findings and conclusion that Plaintiff is not disabled and is capable of performing a significant number of jobs at any exertional level.  Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Judgment on the Pleadings to Reverse the Commissioner's Decision [Doc. 10] be **DENIED** and the Commissioner's Motion for Summary Judgment [Doc. 12] be **GRANTED**.

          Respectfully submitted,

             s/ C. Clifford Shirley, Jr.   
          United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).